UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 5:14-CR-30-DCR-REW-4 |
| v. | ) | RECOMMENDED DISPOSITION |
| JESUS LIZARRARAS-ESTUDILLO, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant, Jesus Lizarraras-Estudillo, by counsel, moves to suppress all physical evidence (and the fruits thereof) seized during law enforcement's March 6, 2014, search of his residence. DE #116. Defendant claims the affidavit underlying the search warrant failed to establish probable cause and that criticisms, premised on discovery, justify a hearing under *Franks v. Delaware*, 98 S. Ct. 2674 (1978). *Id.* The United States responds in opposition, arguing that the affidavit did establish probable cause and that Defendant has not met the *Franks* burden. DE #122. Defendant replied. DE #123.

Both sides agreed that the Court should hold an evidentiary hearing, of some type, to place certain testimony in the record. *See* DE ##121 (Government's Motion for a Hearing); 123. The Court held a hearing on December 8, 2014, noting "that whether to hold this hearing was a close call because it does not neatly fall into the established *Franks* framework" but deciding to proceed based on the parties' joint request and the gravity of Defendant's interest. DE #132 (Minute Entry Order). The Court heard the sworn testimony of two witnesses (LPD Detective Danny Page and DEA Special Agent James England) and admitted two collective exhibits (the

1

affidavit and photocopied images of a heroin field test, substituting for the actual object, which was part of the hearing). *Id.* The Court has reviewed the entire record, including the parties' briefs, the testimony and exhibits, counsel's arguments, and the applicable law. The matter is ripe for consideration. For the following reasons, the Court **RECOMMENDS** that the District Court **DENY** the motion to suppress (DE #116). Defendant has not justified a *Franks* hearing, and probable cause supported the search warrant.

I.   **THE AFFIDAVIT AND THE HEARING[1]**

Detective Danny Page ("Page"), a Lexington narcotics detective with 16 years of police experience (approximately 10 in narcotics), swore to the affidavit at issue before and obtained a search warrant from Fayette District Court Judge Megan Thornton on March 6, 2014. DE #116-2 (Affidavit). The warrant targeted heroin trafficking items at 1346 Village Drive, Apartment #D-18,[2] Lexington, Kentucky, and/or on the person of "Flacko," Defendant's alias. *Id.* at 1.

The affidavit generally details law enforcement's investigation into a heroin trafficking operation in the Northern Kentucky and Lexington areas. *Id.* at 2. A cooperating witness ("CW"), who allegedly was part of the subject black tar heroin ring in Northern Kentucky, advised law enforcement that two Hispanic men, known as Flacko and Izzy, were the CW's main source of supply. *Id.* The CW informed law enforcement that, among others, Duran and Tamara Wombles were part of the heroin operation in Lexington. Agent Curtis Bush ("Bush"), enlisting help from Lexington, began surveillance of Ms. Wombles. The affidavit details officers'

---

[1] The Court gleaned the facts from the affidavit unless otherwise noted. The digital record captured the hearing, and the Court bases its subsequent analyses on facts it finds premised on the affidavit, that record, and hearing exhibits, as appropriate.

[2] The formatting of Defendant's apartment number is inconsistent within the affidavit, *see* DE #116-2, at 1 ("#D-18"); *id.* ("D-18"); *id.* at 3 ("#D18"). Defendant does not argue that these formatting differences are significant in any way. For consistency, the Court adopts "#D-18" for its use.

2

observations of Ms. Wombles beginning on January 18, 2014, including entering the #D-14 through 25 breezeway at 1346 Village Drive, and returning to that apartment complex the next day. *Id.* The CW also informed law enforcement of a January 19 call between Flacko and Ms. Wombles, which the CW translated, concerning a heroin debt. *Id.* That call occurred while police knew Ms. Wombles was in Flacko's apartment building.

On January 20, 2014, Bush informed Page that Ms. Wombles was again (for the third day in a row) driving from Northern Kentucky to Lexington. *Id.* Page located Ms. Wombles's car and began following it. Lexington police then conducted a traffic stop on her car on Newtown Pike, issuing a warning citation. *Id.* Lexington police advised Page that the driver was Ms. Wombles, and her passenger was Eduardo Garcia, whom Page believed (at the time of the affidavit) to be Flacko.[3] *Id.* at 3. Lexington Narcotics officers again followed Ms. Wombles to 1346 Village Drive. *Id.*

The pattern continued on January 26, 2014, when Lexington Narcotics officers observed Ms. Wombles return to 1346 Village Drive and enter the same breezeway. *Id.* This time, however, Page observed a man believed to be Flacko arrive in a black pickup truck (that officers previously observed outside the apartment) and enter the common breezeway. *Id.* Page searched the police database for the truck's plate number and found the truck was registered to an individual who lived at 1346 Village Drive, Apartment #D-18. *Id.*

On March 6, 2014, Bush and members of the Lexington DEA advised Page that law enforcement had arrested both Wombleses based on several controlled purchases of heroin. *Id.* Ms. Wombles cooperated and gave statements related to Flacko's heroin trafficking at 1346

---

[3] At the hearing, Page made clear that the passenger actually was *not* Defendant. Mr. Garcia was Ms. Wombles's boyfriend at the time.

Village Drive. *Id.* She advised officers of her February 24, 2014, purchase of heroin from Flacko at his apartment (either number 16 or 18) and admitted to regular re-ups from Flacko. *Id.* She continued a 2 month / 6 ounce supply relationship with Flacko. She also agreed to place a monitored call to Flacko for the purpose of arranging a heroin buy. *Id.* Flacko agreed to the transaction and advised he was holding (what the officers understood to be, in the coded language of the conversation)[4] heroin. *Id.* Mr. Wombles similarly cooperated and stated he once observed Ms. Wombles give Flacko heroin in a cereal box, retaining a sizable quantity for her own distribution. *Id.*

On the March 6 monitored call, Flacko agreed to and indicated readiness for a heroin deal with Ms. Wombles at his apartment at 1346 Village Drive. Officers took her to the apartment complex, and she entered apartment #D-18. She exited after 20 minutes and returned to the officers. She relinquished a quantity of a substance[5] believed, at the time, to be heroin, based on Task Force Officer Jose Batista's ("Batista") contemporaneous field test that returned a heroin positive result.[6] Ms. Wombles advised Flacko gave her the substance inside apartment #D-18. *Id.* She advised Flacko intended her to take the substance to Northern Kentucky to sell. *Id.*

Page prepared an affidavit in support of a search warrant for Defendant's apartment and person. Based on the affidavit, Judge Thornton found probable cause and issued the search warrant. Law enforcement executed the warrant, seized evidence of heroin trafficking, and

---

[4] Agent England explained the details of the conversation at the hearing. The Court further examines these details below. The affidavit did not relate a verbatim discussion.

[5] This is the crux of the present dispute. The affidavit avers Ms. Wombles relinquished heroin, but it does not explain how Page knew or why he believed the substance to be heroin. In fact, the DEA ultimately determined the substance Flacko provided was *not* heroin, or any other controlled substance. *See* DE #116-4 (DEA Chemical Analysis Report showing "No Controlled Substances"). Page testified he normally does not include field test activity and results in Fayette District Court affidavits.

[6] This information is not in the affidavit; Page added the details at the evidentiary hearing.

arrested Defendant Lizarraras-Estudillo a/k/a Flacko. Defendant now challenges the affidavit's sufficiency based on the characterization of heroin in the March 6 Flacko-Wombles transaction that ultimately proved to be incorrect.

At the evidentiary hearing, Page testified generally to the investigation into heroin distribution involving Flacko and the Wombleses. He advised that TFO Batista, who was present during the March 6 monitored conversation and is a native Spanish speaker, relayed to Page information concerning the call. Page was present for the beginning of the March 6 controlled purchase. He saw Ms. Wombles enter Defendant's apartment to conduct the controlled buy. He left after she entered and was not present when she exited. Batista called Page after Ms. Wombles returned, advised that he field tested the surrendered substance (which weighed approximately 1 ounce), and informed Page that it tested positive for heroin.[7] Page then applied for and obtained a search warrant. Approximately two hours after execution of the search warrant, Page field tested the substance himself (the second time overall); the test again returned a positive result. Law enforcement then sent the substance to the DEA lab for formal testing. The lab ultimately returned a negative result for all controlled substances as to that quantity.[8] DE #116-4.

---

[7] At the hearing, the Court examined an unused heroin field test of the type used on March 6. Page explained generally how the test works and that an inserted substance sample turns green if positive. Page testified he uses these field tests approximately three times per week, and he has never in his career had a "false positive" result (although he has seen approximately 5 false cocaine positives, a substance that requires a different field test). He averred that the heroin field tests are "very reliable" and "pretty dead on." Page further advised that because the heroin that Defendant allegedly trafficked was black tar heroin, which commonly is mixed and cut with other substances, he could not rule out that any specific sample of the substance might be negative for heroin (instead consisting entirely of the added ingredient(s)).

[8] Although, the apartment search yielded confirmed heroin.

Agent England testified to two March 6 telephone calls between Ms. Wombles and Flacko—one from the Erlanger police station and one from his police car. He described the specifics of the car conversation between an individual believed to be Flacko (later determined to be Defendant)[9] and Ms. Wombles. The call occurred in Spanish, which was reliably translated into English for law enforcement use. Ms. Wombles asked Defendant if he had "it" and if he had "the bad stuff." Defendant responded that he had some of "the bad stuff and some more of the good stuff." Ms. Wombles proposed a transaction, and Defendant agreed. Ms. Wombles advised she would meet Defendant soon at his apartment, and Defendant advised that he "had it." Agent England understood "it"—in this context—to be heroin.

## II. DEFENDANT HAS NOT JUSTIFIED A *FRANKS* HEARING.

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 98 S. Ct. at 2676. Further, "a search warrant is invalid when the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 98 S. Ct. at 2676). A "defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (internal quotation marks and citation omitted).

---

[9] England identified Defendant as the other call participant by dialing the same number Ms. Wombles had earlier called during the execution of the search warrant. The cell phone sitting on the table beside Defendant rang. Defendant was the sole inhabitant of the apartment.

In Defendant's initial brief, he argued, "Apparently LFUCG police officers simply assumed the items provided to [Ms.] Wombles in the controlled purchase/delivery were in fact controlled substances and did not perform a field test despite being able to do so[.]" DE #116-1, at 3. He stated, "Given the lack of a field test or other confirmation of the substance involved in the controlled purchase, it appears that . . . Page may have recklessly misstated material facts in his sworn Affidavit, which absent those false statements . . . does not demonstrate probable cause to search the residence[.]" *Id.* at 4. Defendant identified two statements in particular: "Flacko agreed to the transaction and advised that he was holding heroin" and "Ms. Wombles advised that the heroin was given to her by 'Flacko' in order to take back to Northern Kentucky to [sell.]" *Id.* Defendant argued, "The information in the affidavit . . . does not establish probable cause because (i) heroin was not specifically mentioned in the call setting up the controlled purchase and (ii) the substance involved in the purchase/delivery was not heroin." *Id.* He contended that the "failure to verify" whether the substance was a controlled substance "amounts to a reckless disregard whether or not Defendant ever distributed heroin as alleged." *Id.* at 5. Defendant acknowledged, "It might have been reasonable to include the allegations . . . if the allegations had been supported by a preliminary field test[.]" *Id.* He asserted, "[O]nce the distribution of heroin and mention of heroin are deleted from the affidavit and only considering the remaining contents, it is questionable whether probable cause supports the warrant." *Id.*

The United States responded and argued "that the Affidavit contained sufficient information to establish probable cause to obtain a search warrant[.]" DE #122, at 1, 6-7. The Government advised that it was prepared to introduce Page's testimony that he conducted a field

7

test, which returned a positive result. *Id.* at 1-2. The United States also argued that Defendant failed to make the requisite showing to justify a *Franks* hearing. *Id.* at 8.

Defendant replied and addressed the justification for a *Franks* hearing. DE #123. In light of Page's anticipated testimony, Defendant acknowledged "that the inclusion of the alleged distribution of heroin in the affidavit is not necessarily reckless" but argued that a *Franks*, "or some other type" of, hearing was necessary to elicit Page's testimony and explore the issues. *Id.* at 2.

Defendant has not justified a *Franks* hearing. He has not made a substantial preliminary showing that Page knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit. As Page's and England's testimony establish, the information in the affidavit was accurate at the time Page swore to the affidavit.[10] England, through his training

---

[10] *Franks* requires no more. "*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (citing *Franks*, 98 S. Ct. at 2681 (not every fact in the affidavit need be correct)).

Even without the benefit of the hearing testimony, the Court doubts whether Defendant met his *Franks* burden. Even assuming the statements concerning heroin were false, Defendant offers no proof on Page's intent—that he offered false information knowingly and intentionally, or with reckless disregard for the truth. (Indeed, Defendant conceded, in light of the prosecutor's representation concerning Page's testimony, that "the inclusion of the alleged distribution of heroin in the affidavit is not necessarily reckless." DE #123, at 2.) And even if Defendant jumped the intent hurdle, the Court is not convinced that the two complained-about references were necessary to Judge Thornton's probable cause determination. *Cf. United States v. Riddick*, 134 F. App'x 813, 822 (6th Cir. 2005) (upholding probable cause determination when the confidential informant made "statements against his penal interest, coupled with the detail of his statement and his basis for knowledge, as well as the other alleged instances of bank fraud"). Thus, the controlled buys from the Wombleses, the CW corroboration, the intense January contact, the cooperation by both Wombleses, the confirmatory call, and the completed transaction equate to probable cause even if a court redacted specific reference to heroin as to the March 6 call and post-buy characterization. That is, even if the affiant said the call was generic and the material bought was an unknown "substance," the context would supply a reasonable basis for believing that heroin was the material involved. *Franks* erects a high burden to a

and experience as a law enforcement officer and because of his prior investigation in this case, understood the coded Wombles-Flacko phone conversation to concern heroin trafficking. Batista field tested the substance Ms. Wombles relinquished from the transaction with Flacko, and the test returned a heroin positive result.[11] The information Page included in his affidavit was accurate at the time he presented it to Judge Thornton.[12] Further, even though the statement that the substance was heroin proved, ultimately, to be incorrect, Defendant offers no proof that Page included the information in the affidavit with the requisite bad intent—that is, that Page misled Judge Thornton knowingly and intentionally, or with reckless disregard for the truth.[13] Indeed,

---

defendant seeking to challenge an affidavit, and Defendant simply has not surmounted it—in any of its sequential analytical steps—here.

[11] In reviewing a search warrant for another drug trafficking operation, the Sixth Circuit found it "[s]ignificant[]" that the baggies at issue "field-tested positive for cocaine residue." *United States v. Roberson*, 332 F. App'x 290, 295 (6th Cir. 2009).

[12] Case law is clear that, in most situations, later-discovered information does not invalidate previously-determined probable cause. *See, e.g.*, *Lamping v. Walraven*, 30 F. App'x 577, 580 (6th Cir. 2002) (a § 1983 Fourth Amendment violation civil suit) ("[I]t is clear that if [the officer's] field tests incorrectly registered positive, this does not retroactively eliminate probable cause at the time the warrant was issued.") (citing *Maryland v. Garrison*, 107 S. Ct. 1013, 1017 (1987)); *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("Johnson's challenges to the informant's incorrect description of Johnson's appearance and the apartment are likewise unsuccessful because there is no evidence that Batterham was aware of these inaccuracies at the time he filed the affidavit."). As the United States conceded at the hearing, the lab information may impact which charges may be brought against Defendant, but it does not call into question Judge Thornton's probable cause determination.

[13] "The mere fact that the laboratory test returned a contrary result does not raise an inference that [the officer] was lying when he said his tests came out positive; more evidence is needed." *Lamping*, 30 F. App'x at 580; *see also Simms v. McDowell*, No. 4:08-CV-60, 2009 WL 3160353, at *6 (W.D. Ky. Sept. 25, 2009) ("[T]he result of the field test provided probable cause to arrest Simms.").

*Green* presents an analogous situation to the "false positive" scenario here. Green disputed the affidavit's statement that the substance at issue was field-tested "with positive results" because it returned a heroin positive, not a crack cocaine positive (the drugs actually were crack). 572 F. App'x at 443. However, the officer "twice testified that the substance obtained during the controlled purchases was crack cocaine. He attributed the heroin misclassification to human error, which is insufficient to make a substantial preliminary showing that [the officer] intentionally or recklessly falsified his affidavit." *Id.* at 443-44; *see also United*

the hearing record conclusively shows that Page quite honestly and reasonably used the verbiage he did. There is no statement eligible for severance from the affidavit. Defendant has not met his burden to justify a *Franks* hearing or attendant relief under that case.[14]

### III. PROBABLE CAUSE SUPPORTED THE SEARCH WARRANT.

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST., amend. IV. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). To determine probable cause, an issuing judge must examine the totality of the circumstances and find "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted). A supporting affidavit must sufficiently demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing judge's determination. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Such deference ensures than "an issuing [judge's] discretion [will] only be reversed if it was arbitrarily exercised." *See United States v. Allen*, 211 F.3d 970,

---

*States v. Neal*, 577 F. App'x 434, 451 (6th Cir. 2014) ("[I]nconsistent testimony after the affiant has given a statement does not show that the affiant acted with reckless disregard for the truth."). As the cases show, a defendant's "[a]llegations of negligence or innocent mistake are insufficient." *Franks*, 98 S. Ct. at 2684.

[14] There is, again, some awkwardness in having heard evidence but denying a *Franks* hearing. In a sense, Defendant got the chance at *Franks* proof without meeting the burden. Given the particular scenario here—with the United States eager to offer the proof and the proof directly addressing Defendant's lynchpin argument as to the absence of a field test—the Court lives with some analytical dissonance.

973 (6th Cir. 2000). The reviewing court must uphold the issuing judge's probable cause determination if a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 103 S. Ct. 2317, 2331 (1983); *Allen*, 211 F.3d at 973.

Additionally, line-by-line scrutiny of the supporting affidavit is inappropriate, *Jackson*, 470 F.3d at 306 (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)), and the reviewing court must limit its analysis to the "information presented in the four corners of the affidavit."[15] *Id.*; *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). When the search at issue occurred pursuant to a warrant, the defendant has the burden of establishing a prima facie case that the search was illegal. *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976); *see also United States v. Franklin*, 284 F. App'x 266, 275 (6th Cir. 2008) (Clay, J., dissenting). The Court examines the affidavit at issue through a prism of common sense. *Gates*, 103 S. Ct. at 2331, 2333.

Here, probable cause supported warrant issuance. The affiant, Page, set forth numerous details of law enforcement's investigation into the heroin trafficking operation in which Defendant allegedly participated. Page directly ties Flacko to heroin through (1) Mr. Wombles's statement that he saw Ms. Wombles give Flacko heroin in a cereal box, (2) Ms. Wombles's February 24, 2014, heroin buy from Flacko, and her reported 2 month / 6 ounce supplier history,[16] (3) the phone conversation between Ms. Wombles and Flacko, setting up the March 6

---

[15] The Court restricts itself, as it must, to the contents of the affidavit in its probable cause analysis, despite its earlier consideration of extrinsic evidence presented at the hearing. The *Franks* hearing propriety and ultimate probable cause analyses are distinct and properly segregated.

[16] A "known informant's statement can support probable cause" even without additional other information concerning her credibility. *United States v. Kinison*, 710 F.3d 678, 682-83 (6th Cir.

buy, and (4) the substance Ms. Wombles relinquished, given to her by Flacko in his apartment. Further, per the affidavit, Ms. Wombles confirms Flacko provided heroin to her on that date for subsequent sale in Northern Kentucky. Page ties Flacko to apartment #D-18 through investigation of the truck, surveillance outside the apartment, and the March 6 controlled purchase. These prior transactions, the monitored conversation, and the controlled buy all directly tie heroin possession and trafficking to Defendant and Defendant's residence, 1346 Village Drive, Apartment #D-18.

Additionally, law enforcement conducted its own, thorough investigation. Officers began probing the heroin ring through a CW, who identified Flacko as a heroin supplier. The January 19 surveillance and contemporaneous call by the CW directly corroborate the CW's connectivity and knowledge. Officers conducted visual surveillance of 1346 Village Drive and observed Defendant entering and leaving the subject breezeway. Officers identified Defendant's truck and verified that it was registered to an individual at Defendant's address. Police monitored the later call between Ms. Wombles and Flacko that implicated Flacko in heroin trafficking.[17] Law enforcement searched Ms. Wombles before and after the controlled buy to ensure the buy's integrity. The controlled purchase—at the time—confirmed law enforcement's investigation; Ms. Wombles returned from Defendant's apartment with a substance consistent with the deal, a

---

2013). Here, law enforcement, through its own investigation, was able to corroborate many of the details of the Wombleses' statements. Further, the Wombleses' statements, which implicate them in crimes, may be considered in the probable cause calculus. *See United States v. Braden*, 248 F. App'x 700, 703 (6th Cir. 2007) ("Because the affidavit named Lilly herself as having personally observed drugs at Braden's residence, the magistrate could credit Lilly's tip, volunteered against her interest, as reliable without police corroboration or other indicia of reliability.") (citing *United States v. Harris*, 91 S. Ct. 2075, 2082 (1971) (plurality opinion) (courts may consider informants who volunteer information against their interests reliable)).

[17] Certainly, the affidavit could have but did not relate that the pre-buy call did not explicitly use the term "heroin." However, the affiant's conveyance of the call interpretation certainly was honest and supported reasonably in the case milieu.

substance she characterized as heroin. That police already had arrested Tamara Wombles and Duran Wombles based on controlled buys is validation of their inculpation of Lizarraras and the police characterizations within the affidavit.

Page presented plenteous facts, gathered over months of police investigation, surveillance, and work with cooperators, that supported warrant issuance. The affidavit offered facts, viewed through a common sense, totality of the circumstances prism, that plainly provided a reasonable basis to believe—far more than a mere suspicion—that officers would find evidence of heroin trafficking at apartment #D-18 and/or on Flacko's person. Judge Thornton had a substantial basis on which to issue the warrant based on the totality of the evidence presented in the affidavit.

## IV. CONCLUSION

Defendant has not justified a *Franks* hearing, and probable cause supported the search warrant.[18] Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion to suppress (DE #116).

\* \* \* \* \*

The Court issues this recommendation under 28 U.S.C. § 636(b)(1)(B). To maintain the schedule, the objection deadline shall be December 24, 2014. The parties should consult 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. Failure to object in accordance with the Rule waives a party's right to review.

This the 15th day of December, 2014.

---

[18] Because the Court so concludes, it need not analyze the propriety of suppression as a remedy. *See United States v. Godfrey*, 427 F. App'x 409, 412-13 (6th Cir. 2011); *United States v. Master*, 614 F.3d 236, 241-43 (6th Cir. 2010).

