UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 14-30-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JESUS LIZARRARAS-ESTUDILLO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the Recommended Disposition regarding Defendant Jesus Lizarraras-Estudillo's motion to suppress evidence obtained during a search of his residence pursuant to a search warrant.  [Record Nos. 116, 133]  United States Magistrate Judge Robert E. Wier conducted an evidentiary hearing on December 8, 2014, because both parties asked for a hearing, although Magistrate Judge Wier did not make a preliminary determination that Lizarraras was entitled to a *Franks* hearing.  [Record No. 132] Following the hearing, Magistrate Judge Wier found that Lizarraras did not meet his burden to demonstrate that a *Franks* hearing was justified as an initial matter or following the evidentiary hearing.  [Record No. 133]

The Magistrate Judge recommended that the Court deny the motion to suppress on December 15, 2014.  [Record No. 133]  The defendant filed objections to the Magistrate Judge's Recommended Disposition on December 23, 2014 and the Government responded.[1]

---

[1] To maintain the trial schedule, the Magistrate Judge abbreviated the standard time for filing objections.  [Record No. 133, p. 13]

-1-

[Record No. 134, 135] Lizarraras' objections generally address the initial arguments made in support of the motion to suppress and for a *Franks* hearing. Having fully considered the matter, the Court will adopt the Magistrate Judge's recommendation, overrule Lizarraras' objections and deny his motion to suppress.[2]

### I.

Lizarraras moves to suppress all physical evidence seized during the March 6, 2014 search of his residence located at 1346 Village Drive, Apartment D-18, in Lexington, Kentucky. [Record No. 116] Lizarraras argues that the affidavit underlying the search warrant did not establish probable cause and that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

The relevant facts are summarized by the Magistrate Judge as follows:

Detective Danny Page ("Page"), a Lexington narcotics detective with 16 years of police experience (approximately 10 in narcotics), swore to the affidavit at issue before and obtained a search warrant from Fayette District Court Judge Megan Thornton on March 6, 2014. DE #116-2 (Affidavit). The warrant targeted heroin trafficking items at 1346 Village Drive, Apartment #D-18, Lexington, Kentucky, and/or on the person of "Flacko," Defendant's alias. *Id.* at 1.

The affidavit generally details law enforcement's investigation into a heroin trafficking operation in the Northern Kentucky and Lexington areas. *Id.* at 2. A cooperating witness ("CW"), who allegedly was part of the subject black tar heroin ring in Northern Kentucky, advised law enforcement that two Hispanic men, known as Flacko and Izzy, were the CW's main source of supply. *Id.* The CW informed law enforcement that, among others, Duran and Tamara Wombles were part of the heroin operation in Lexington. Agent Curtis Bush ("Bush"), enlisting help from Lexington, began surveillance of Ms. Wombles. The affidavit details officers' observations of Ms. Wombles beginning on

---

[2] While this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

January 18, 2014, including entering the #D-14 through 25 breezeway at 1346 Village Drive, and returning to that apartment complex the next day. *Id.* The CW also informed law enforcement of a January 19 call between Flacko[, the CW,] and Ms. Wombles, which [Ms. Wombles] translated, concerning a heroin debt. *Id.* That call occurred while police knew Ms. Wombles was in Flacko's apartment building.

On January 20, 2014, Bush informed Page that Ms. Wombles was again (for the third day in a row) driving from Northern Kentucky to Lexington. *Id.* Page located Ms. Wombles's car and began following it. Lexington police then conducted a traffic stop on her car on Newtown Pike, issuing a warning citation. *Id.* Lexington police advised Page that the driver was Ms. Wombles, and her passenger was Eduardo Garcia, whom Page believed (at the time of the affidavit) to be Flacko. *Id.* at 3. Lexington Narcotics officers again followed Ms. Wombles to 1346 Village Drive. *Id.*

The pattern continued on January 26, 2014, when Lexington Narcotics officers observed Ms. Wombles return to 1346 Village Drive and enter the same breezeway. *Id.* This time, however, Page observed a man believed to be Flacko arrive in a black pickup truck (that officers previously observed outside the apartment) and enter the common breezeway. *Id.* Page searched the police database for the truck's plate number and found the truck was registered to an individual who lived at 1346 Village Drive, Apartment #D-18. *Id.*

On March 6, 2014, Bush and members of the Lexington DEA advised Page that law enforcement had arrested both Wombleses based on several controlled purchases of heroin. *Id.* Ms. Wombles cooperated and gave statements related to Flacko's heroin trafficking at 1346 Village Drive. *Id.* She advised officers of her February 24, 2014, purchase of heroin from Flacko at his apartment (either number 16 or 18) and admitted to regular re-ups from Flacko. *Id.* She continued a 2 month / 6 ounce supply relationship with Flacko. She also agreed to place a monitored call to Flacko for the purpose of arranging a heroin buy. *Id.* Flacko agreed to the transaction and advised he was holding (what the officers understood to be, in the coded language of the conversation) heroin. *Id.* Mr. Wombles similarly cooperated and stated he once observed Ms. Wombles give Flacko heroin in a cereal box, retaining a sizable quantity for her own distribution. *Id.*

On the March 6 monitored call, Flacko agreed to and indicated readiness for a heroin deal with Ms. Wombles at his apartment at 1346 Village Drive. Officers took her to the apartment complex, and she entered apartment #D-18. She exited after 20 minutes and returned to the officers. She relinquished a quantity of a substance believed, at the time, to be heroin, based on Task Force Officer Jose Batista's ("Batista") contemporaneous field test that returned a heroin positive result. Ms. Wombles advised Flacko gave her the substance

inside apartment #D-18. *Id.* She advised Flacko intended her to take the substance to Northern Kentucky to sell. *Id.*

Page prepared an affidavit in support of a search warrant for Defendant's apartment and person. Based on the affidavit, Judge Thornton found probable cause and issued the search warrant. Law enforcement executed the warrant, seized evidence of heroin trafficking, and arrested Defendant Lizarraras-Estudillo a/k/a Flacko. Defendant now challenges the affidavit's sufficiency based on the characterization of heroin in the March 6 Flacko-Wombles transaction that ultimately proved to be incorrect.

At the evidentiary hearing, Page testified generally to the investigation into heroin distribution involving Flacko and the Wombleses. He advised that TFO Batista, who was present during the March 6 monitored conversation and is a native Spanish speaker, relayed to Page information concerning the call. Page was present for the beginning of the March 6 controlled purchase. He saw Ms. Wombles enter Defendant's apartment to conduct the controlled buy. He left after she entered and was not present when she exited. Batista called Page after Ms. Wombles returned, advised that he field tested the surrendered substance (which weighed approximately 1 ounce), and informed Page that it tested positive for heroin. Page then applied for and obtained a search warrant. Approximately two hours after execution of the search warrant, Page field tested the substance himself (the second time overall); the test again returned a positive result. Law enforcement then sent the substance to the DEA lab for formal testing. The lab ultimately returned a negative result for all controlled substances as to that quantity. DE #116-4.

Agent England testified to two March 6 telephone calls between Ms. Wombles and Flacko — one from the Erlanger police station and one from his police car. He described the specifics of the car conversation between an individual believed to be Flacko (later determined to be Defendant) and Ms. Wombles. The call occurred in Spanish, which was reliably translated into English for law enforcement use. Ms. Wombles asked Defendant if he had "it" and if he had "the bad stuff." Defendant responded that he had some of "the bad stuff and some more of the good stuff." Ms. Wombles proposed a transaction, and Defendant agreed. Ms. Wombles advised she would meet Defendant soon at his apartment, and Defendant advised that he "had it." Agent England understood "it" — in this context — to be heroin.

[Record No. 133, p. 2–6 (footnotes omitted)]

In support of his motion to suppress, Lizarraras argues that: (i) heroin was not specifically mentioned in the phone call to set up the controlled purchase; and (ii) the

substance involved in the purchase and delivery was not, in fact, heroin. [Record No. 116-1, p. 4] Lizarraras concedes that heroin was found at his residence in the course of the search. [Record No. 116-1, p. 3 n. 2]

Lizarraras points to two alleged false statements in the affidavit. The first is that during the monitored phone call between Ms. Wombles and Flacko, "Flacko agreed to the transaction and advised that he was holding heroin." [Record Nos. 116-1, p. 4; 116-2, p. 3] However, the testimony and other evidence revealed that Flacko did not use the word "heroin" specifically during the call. The second statement was that, after the controlled purchase on March 6, "Ms. Wombles advised that the heroin was given to her by 'Flacko' in order to take back to Northern Kentucky to sale (sic)." [Record Nos. 116-1, p. 4; 116-2, p. 3] Importantly, while the affidavit stated that Ms. Wombles "relinquished a quantity of heroin" after the controlled purchase on March 6, the affidavit did not explain why the affiant — Page — believed that the substance was heroin, outside of Ms. Wombles' alleged representation of that fact .

It was not until the hearing that testimony of the officers revealed that the substance had been field tested twice and had returned positive results both times. Nevertheless, the subsequent lab tests indicated that the substance Ms. Wombles provided was not heroin.

II.

**A. Lizarraras has not demonstrated that he is entitled to a *Franks* hearing.**

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the

defendant's request." *Franks*, 438 U.S. at 155–56. Likewise, omissions from a search-warrant affidavit are also relevant for *Franks* purposes. *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004)). To establish the need for a *Franks* hearing, the defendant must: (i) make a substantial preliminary showing that a false statement knowingly, and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (ii) show that the allegedly false statement is necessary to the finding of probable cause. *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (citing *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)). A defendant requesting this relief "has a heavy burden." *Green*, 572 F. App'x at 505 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

The Magistrate Judge concluded that Lizarraras failed to justify holding a *Franks* hearing. Relying on evidence gleaned through the hearing, the Magistrate Judge found that the statements in the affidavit (*i.e.*, that the substance procured by Ms. Wombles as part of the controlled purchase was heroin) were not knowingly, intentionally or recklessly made. At the time they were written, Page's statements were accurate to the best of his knowledge. [Record No. 133, p. 8] The substance had tested positive for heroin in the field. [Record No. 133, p. 9] Lizarraras objects on the basis that the Magistrate Judge denied the *Franks* hearing based on evidence obtained through the (non-*Franks*) hearing, rather than examining Lizarraras' preliminary showing demonstrating that he was entitled to a *Franks* hearing. [Record No. 134, p. 3] In other words, Lizarraras argues that he met his burden for a *Franks* hearing before the evidentiary hearing in this case and, therefore, he is entitled to an actual *Franks* hearing. The Court disagrees.

As the Magistrate Judge noted, there is some "awkwardness in having heard evidence but denying a *Franks* hearing." [Record No. 133, p. 10 n. 14]  In essence, Lizarraras was given the opportunity to take *Franks* proof without meeting the initial burden required. [*Id.*] Despite having the opportunity to elicit testimony, Lizarraras has been unable to establish that Page knowingly, intentionally, or recklessly identified the substance as heroin. *Franks*, 438 U.S. at 155–56. "[A] defendant is entitled to an evidentiary hearing on the veracity of the statements of the affidavit and the warrant affidavit *if and only if* Defendant shows that there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Cummins*, 912 F.2d 98, 101 (6th Cir. 1990) (citations and internal quotation marks omitted) (emphasis added).

Lizarraras has provided evidence that the statements regarding the identity of the substance were incorrect, but has failed to demonstrate, either as a preliminary matter or after the hearing, that "specific false statements" were made "intentionally or with reckless disregard for the truth." *Bennett*, 905 F.2d at 934; *see also Cummins*, 912 F.2d at 101.  The Court agrees — for the same reasons explained by the Magistrate Judge — that Page's statements regarding the substance Ms. Wombles provided after the transaction with Lizarraras were accurate at the time they were made.  Likewise, based on his experience and prior investigation in the case, Page reasonably concluded that he understood the Flacko-Wombles conversation to reference heroin.  Page did not intentionally or knowingly make false statements and did not make them with reckless disregard of the truth.  Even assuming that Lizarraras had established the first step, which he has not, he cannot meet the second requirement for a *Franks* hearing, which is that the warrant lacked probable cause excluding the questioned statements.  [*See* Record No. 133, p. 8 n. 10]

### B. The affidavit provided sufficient probable cause for the issuance of the search warrant.

With or without the challenged statements, the affidavit provided sufficient probable cause to support the search warrant. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *Bennett*, 905 F.2d at 934). It is the duty of the reviewing court to ensure that the issuing judge "had a substantial basis for concluding that probable cause existed." *Carpenter,* 360 F.3d at 594 (citations and internal quotations omitted). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. In other words, there must be a nexus between the place to be searched and the evidence sought." *Id.* (citations and internal quotations omitted). The affidavits "must be tested and interpreted by magistrates and courts in a common sense and realistic fashion." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

This undersigned has considered all of the facts alleged in the affidavit, such as the corroborating and inculpatory statements of Mr. and Mrs. Wombles, monitored conversations with Flacko, the description of the controlled purchase, observations of law enforcement during surveillance, and other evidence indicating that drugs could be found at 1346 Village Drive, apartment D-18. *Frazier*, 423 F.3d at 531 ("[O]ur review . . . is limited to the information presented in the four-corners of the affidavit."). Considering totality of the circumstances and the "factual and practical considerations of everyday life," the Court finds that probable cause supported the issuance of the search warrant in this matter. *Coffee*, 434 F.3d at 892; *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The same can

be said even if the challenged statements are excluded from the affidavit. The two issues challenged by Lizarraras (*i.e.*, that Flacko "advised that he was holding heroin," when Flacko did not use the word heroin, and that Flacko gave heroin to Ms. Wombles, when the substance was not actually heroin) are not dispositive of the probable cause analysis in the circumstances presented.  Facts observed during surveillance and investigation by law enforcement and the statements and actions by Mr. and Ms. Wombles and the CW demonstrated a fair probability that contraband or evidence of a crime would be found at Lizarraras' residence. *See United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009).  For the same reasons specifically set out in the Magistrate Judge's Recommended Disposition, the Court finds that the affidavit established sufficient probable cause underlying the search warrant.

### III.

Based on the foregoing discussion and analysis, it is

**ORDERED** that:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 133] is **ADOPTED** and **INCORPORATED** by reference;

2. Defendant Jesus Lizarraras-Estudillo's objections to the Magistrate Judge's Recommended Disposition [Record No. 134] are **OVERRULED**; and

3. Defendant Jesus Lizarraras-Estudillo's motion to suppress [Record No. 116] is **DENIED**.

This 31st day of December, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge